Jones, Judge:
The complaint in this case was filed on November 17, 1967, for damages alleged to have resulted from negligent and unauthorized surgery performed at Fairmont Emergency Hospital on September 6, 1946, by a doctor employed by the State-operated institution.
The claimant, Margaret Meadows Blondheim, testified that she was admitted to the Fairmont Emergency Hospital on September 13, 1946 and was examined by Dr. C. M. Ramage, Superintendent, who diagnosed her illness as cholecystitis; that she consented to an operation to remove her gallbladder and to have her tubes tied; that she underwent the operation on September 16, 1946, and thereafter was told by Dr. Ramage *171 that “your gallbladder was not functioning, it was bad, and we removed it”; that she, her husband and three children moved from Marion County, West Virginia, to Akron, Ohio in April, 1954; that after she went to Ohio, a doctor examined her and told her she had “a coronary heart” and he put her on niti’oglycerin; that she went to about five doctors during the period of about twenty years, and none of them said she had gallbladder trouble; that in April, 1966, she became very ill and went to Dr. Robert E. Mosteller, an osteopathic physician and surgeon; that Dr. Mosteller told her that her gallbladder was “acting up”, whereupon she informed the doctor that her gallbladder had been removed in 1946; that Dr. Mosteller put her in the hospital for x-rays, and it was determined that her gallbladder was still in place; that since discovering that she still has a gallbladder, she has become more nervous, is subject to belching and abdominal pain, cannot sleep and has lost her appetite; and that she has undergone and will continue to undergo great pain and suffering.
The testimony of the claimant, Rondal K. Blondheim, corroborated substantial portions of his wife’s testimony.
Dr. Mosteller’s deposition was taken and filed in evidence, and his testimony is substantially as follows: The claimant visited his office for the first time on April 8, 1966, complaining of headaches and chest pain. After examination, his diagnosis was “Anemia, menopausal syndrome, exogenous obesity and coronary insufficiency.” As to medical history: “She stated that she had had hypotension for 10 years. She stated that she had a cholecystectomy in 1946. Tubes were tied same year. Bowel surgery in 1960 for adhesions and appendix. Gastric surgery for peptic ulcer 1961. She stated she had heart trouble in 1963, has taken nitroglycerin since. Also, that two cervical cysts were excised.” He prescribed nitroglycerin. X-rays were taken in March and November, 1967, all showing the existence of the gallbladder. “There appears to be a normal functioning gallbladder”, but the doctor “suspects” that the claimant has biliary dyskinesia which “possibly” could require gallbladder surgery. He could not say whether the claimant’s gallbladder would have to be removed in the future, or whether her life expectancy may be shortened. He further stated that there is “a degree of likelihood that Mrs. Blondheim will have difficulty *172 with her gallbladder in the future”, and that such difficulty may bring about the necessity for surgery. The doctor testified that, in his opinion, the knowledge that she has a gallbladder has aggravated the claimant’s nervous condition.
The hospital record which was introduced into evidence is made up of four pages. The Personal History page for “Margaret Meadows” has the name “Dr. Ramage” in the upper right corner, but on the signature line are the initials “LRC” which are the initials of Dr. L. R. Conley whose name appears on the operating record as assistant surgeon. The Physical Examination sheet shows “Examined by LRC.” The Operative Record consisting of two pages shows the surgeon as Dr. C. M. Ramage, the assistant surgeon, L. R. Conley, and the operation to be “Cholecystectomy, Bilateral Tubal ligation,” and again this report is signed “LRC”. This record goes into considerable detail in describing the operation. As an example, we quote: “Upon entering the abdomen, examining hand wras inserted into the gall bladder region. Gall Bladder was found to contain ad-hesions around the cystic duct and the wall was thickened and showed signs of inflammation of the gall bladder.”
Dr. Ramage has been dead for many years, and the other principals present at the operation, except the claimant, are dead or have no recollection of the case. While it appears only to be a coincidence, sometime after the operation the claimants changed their last name from Meadows to Blondheim.
This is a most extraordinary case, and it appears that the complete and true facts can never be reconstructed. It strains credulity to think that Dr. Ramage or Dr. Conley wrote a gallbladder operative record out of the whole cloth — that it could have been deliberately falsified. If the recitals were true, then they had to apply to another patient which would mean that there was a mix-up in the hospital records or in the identity of patients, and some twenty-two years later, we are inclined to accept that view.
It is apparent that the claimant is not in good health and does suffer from her several ailments. The Court is satisfied that the claimant’s gallbladder was not removed in 1948 and that it was then a healthy organ and should not have been removed. The Court believes that part of the operation — the tying of her *173 tubes — was useful, and that the claimant many years ago recovered from the operation without any ill effects. The Court does not believe that the recent discovery that she has a gallbladder, which had stood her in good stead for over twenty-one years and which, according to the evidence, is not likely to cause serious difficulty in the future, should cause the claimant any more distress than she already had at the time of such discovery; and the medical testimony is not sufficient to support the subjective symptoms and complaints.
There is little that is clear in this case, and all of the damages sought to be proved are highly speculative; and having weighed all of the evidence and all reasonable inferences derived therefrom, the Court is of opinion that the claimants have not sustained the burden of proof necessary to invoke the conscience of the State of West Virginia, and, therefore, this claim is disallowed.